O

# United States District Court
# Central District of California

| | |
|---|---|
| RAINA GUSTAFSON,<br><br>                    Plaintiff,<br><br>        v.<br><br>EXPERIAN INFORMATION<br>SOLUTIONS INC.; SYSTEMS &<br>SERVICES TECHNOLOGIES, INC.;<br>HSBC BANK USA NATIONAL<br>ASSOCIATION; DOES 1–10, inclusive,<br>                    Defendants. | Case No. 2:14-cv-01453-ODW(Ex)<br><br>**ORDER GRANTING DEFENDANT<br>SYSTEMS & SERVICES<br>TECHNOLOGIES, INC.'S MOTION<br>FOR SUMMARY JUDGMENT [47]** |

## I.    INTRODUCTION

Plaintiff Raina Gustafson ("Gustafson") alleges that Defendant Systems & Services Technologies, Inc. ("SST") violated a myriad of federal and state debt-collection laws by allegedly "double reporting" a debt.  Gustafson contends that SST inaccurately reported the same $705 debt twice, though under different names and with different account numbers, and failed to accurately conduct an investigation after receiving a dispute notice from her and Defendant Experian Information Solutions Inc.  SST moves for summary judgment on the basis that the information it reported was true and accurate and that Gustafson cannot prove actual damages due to SST's

conduct.  For the reasons discussed below, the Court **GRANTS** SST's Motion for Summary Judgment.[1]  (ECF No. 47.)

## II.   FACTUAL BACKGROUND

Since her graduation from college, Gustafson claims she has struggled through numerous life challenges, both physically and financially.   In her mid-twenties, Gustafson claims to have suffered from a number of distressing physiological symptoms without a successful diagnosis.  (ECF No. 63, Gustafson Decl. ¶ 8.)  This led her on a holistic path that included the practice of yoga.  Unfortunately, yoga was also the cause of a hamstring injury in 2004.  (SUF 3.)  By 2006, Gustafson's yoga career came to an end due to further complications with her hip injury and in 2007 she was hospitalized due to seizures.  (Gustafson Decl. ¶ 9–10.)  By 2014, Gustafson finally was diagnosed with an immune deficiency, which she claims presents symptoms such as vertigo, nausea, cognitive impairment, fatigue, chest pains, shortness of breath, upper and lower respiratory infections, and severe arthritis.  (*Id.* ¶ 12.)  The combination of her immune-deficiency and hamstring injury required hip surgery in February 2014.  (*Id.*)

Parallel to these health issues were Gustafson's financial troubles.  On January 6, 2004, Gustafson filed for bankruptcy, which would remain on her credit report for the next 10 years.  (SUF 1.)  15 U.S.C. § 1681c(1).  A few years after her bankruptcy, in June 2006, Gustafson obtained a credit card account with Columbus Bank and Trust (an earlier name for Synovus) which is the subject of this lawsuit.  (SUF 4.)  The account was serviced by SST on behalf of the creditor, Synovus, to service the account, process any payments, and report delinquent debts to the credit reporting agencies.  (SUF 6.)  Less than a year later, Gustafson defaulted, failing to pay the $705 balance on the account.  (SUF 5, 6.)  After Gustafson's payment was more than 150 days past due, Synovus charged-off and sold the debt to CIGPFI.  (SUF 8.)

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

Coincidentally, CIGPFI also hired SST as its loan servicer.  (SUF 12.)  SST stopped furnishing the Synovus tradeline to Experian in January 2008, but Experian continued to report the charged-off debt.  (SUF 10–11.)

Between 2006 and 2013, Gustafson's credit report showed that Gustafson defaulted on at least four other lines of credit, each with delinquent balances higher than $705, with creditors including Capital One, HSBC, LVNV Funding, and Prosper Marketplace, Inc.  (SUF 38.)  On February 8, 2012, Gustafson obtained a copy of her Experian credit report and discovered two entries for an SST account.  (SUF 39.)  The first account read "SST/CIGPFICORP, Account #1970xxxxxx; Status: charged off $705; Status Details: this account is scheduled to continue on record until March 2014."   (ECF No. 54, Brennan Decl., Ex. 13.)   The second entry listed "SST/SYNOVUS, Account #403624000702xxx; Status: Closed $705 written off." (*Id.*)

Subsequently, Gustafson made repeated disputes to Experian.  (SUF 19.)  SST received notices of consumer disputes from Experian regarding both the Synovus and CIGPFI tradelines on September 30, 2013 and January 28, 2014.   (SUF 20–23.)  Because Experian's pre-defined options for customer disputes did not include an option directly applicable to Gustafson's concerns, Gustafson's complaints to Experian claimed that the debts were already paid or that the debts were not hers. (SUF 19.)  SST investigated the disputes, confirming the identity of Gustafson and that the information currently being reported was accurate.  (SUF 20–23.)   On February 12, 2014, SST sent all three credit-reporting agencies Automated Universal Data ("AUD") forms regarding the Synovus tradeline.  (SUF 25.)  TransUnion and Equifax removed the Synovus account, but it remained on Experian's credit report. (Gustafson Decl. ¶ 4a.)

On January 20, 2014, Gustafson was denied a loan by Springleaf Financial Services, Inc. ("Springleaf") for her hip surgery.  (SUF 33.)  She was ultimately able

3

to obtain a loan from her boyfriend, Koranin Suwannaprasert, for her surgery in February 2014.  (SUF 36.)

On February 26, 2014, Gustafson filed this action against Experian, HSBC Bank, and SST, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2; California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788–1788.3; the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p; and the California Consumer Credit Reporting Agencies Act ("CCCRAA"), Cal. Civ. Code §§ 1785.1–1785.6. (ECF No. 1.)   On May 21, 2014, the Court dismissed with prejudice Gustafson's FCRA claim against SST for "violations of § 1681s-2(a) or for double reporting" and her CCCRA claim against SST to the extent it alleged a "failure-to-investigate."  (ECF No. 20 at 19–21.)  Subsequently, both HSBC and Experian were dismissed from the case.  (*See* ECF Nos. 26, 44.)   On February 6, 2015, SST moved for summary judgment on the remaining FCRA claim, CCCRA claim, and the specific provisions of the FDCPA and RFDCPA.  (ECF No. 47.)   A timely opposition and reply were filed.  (ECF Nos. 55, 60.)  That Motion is now before the Court for decision.

## III.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  *See id.*  On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case.  *See id.*  If the

moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). Conclusory, speculative testimony in affidavits or moving papers is insufficient to meet this burden, or raise genuine issues of fact defeating summary judgment. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"); *Thornhill Pub. Co., Inc. v. GTE Corp*., 594 F.2d 730, 738 (9th Cir. 1979).

In judging the evidence presented in support of or opposition to summary judgment, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electrical Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). Nonetheless, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. Niagara Falls*, 754 F.2d 49, 56 (2d Cir. 1985); *Thornhill*, 594 F.2d at 738.

## IV.   DISCUSSION

### A.   FCRA

Congress enacted the FCRA, 15 U.S.C. §§ 1681–1681x, in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 50 (2007). As an important means to this end, the Act sought to make "consumer reporting agencies exercise their grave responsibilities [in assembling and evaluating consumers' credit, and disseminating information about consumers' credit] with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). In addition, to ensure that credit reports are accurate, the FCRA imposes some duties on the sources, called "furnishers," that provide credit information to Credit Reporting

Agencies ("CRA").[2]   Section 1681s–2 sets forth "[r]esponsibilities of furnishers of information to consumer reporting agencies," delineating two categories of responsibilities.  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153-54 (9th Cir. 2009).  Subsection (a) imposes a duty to provide accurate information; however, duties imposed on furnishers under this section are enforceable only by federal or state agencies.  *See id.*  Indeed, this Court has already held that Gustafson does not have a private right of action under § 1681s-2(a).  (*See* ECF No. 20.)

Thus, the second category of duties imposed by § 1681s-2(b) is the only relevant provision to the dispute at hand.  These obligations are triggered "upon notice of dispute"—that is, when a person who furnished information to a CRA receives notice from the CRA that the consumer disputes the information.  *See* § 1681i(a)(2) (requiring CRAs promptly to provide such notification containing all relevant information about the consumer's dispute).  Subsection 1681s–2(b) provides that, after receiving a notice of dispute, the furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) . . . ;
> (C) report the results of the investigation to the [CRA];
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information . . . ; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) . . .
>> (i) modify . . .
>> (ii) delete[or]
>> (iii) permanently block the reporting of that item of information [to the CRAs].

---

[2] There is no dispute that SST is a "furnisher" under the statute.

§ 1681s–2(b)(1).  These duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b).  *See id*.; *Nelson v. Chase Manhattan Mortgage Corp*., 282 F.3d 1057, 1059–60 (9th Cir. 2002).  The FCRA expressly creates a private right of action for willful or negligent noncompliance with its requirements under subsection (b).  §§ 1681n, 1681o; *see also Gorman*, 584 F.3d at 1153–54.

### 1.   SST Performed a Reasonable Investigation

SST argues that it sufficiently and reasonably investigated the notices of dispute from Experian in compliance with § 1681s–2(b)(1).  A furnisher's investigation under this statute must be reasonable.  *Gorman*, 584 F.3d at 1157.  "[S]ummary judgment is not precluded altogether on questions of reasonableness," but "[i]t is only appropriate 'when only one conclusion about the conduct's reasonableness is possible.'"  *Id*. (quoting *In re Software Toolworks Inc*., 50 F.3d 615, 622 (9th Cir. 1994); *see also Hariton v. Chase Auto Fin. Corp*., No. CV 08-6767 AHM, 2010 WL 3075609, at *4 (C.D. Cal. Aug. 4, 2010).  The burden of showing the investigation was unreasonable is on the plaintiff.  *See Gorman*, 584 F.3d at 1157.  Further, the plaintiff must demonstrate some causal relationship between the furnisher's unreasonable investigation and the failure to discover inaccuracies in his account.  *Chiang v. Verizon New England, Inc*., 595 F.3d 26, 38 (1st Cir. 2010).

What is a reasonable investigation by a furnisher may vary depending on the circumstances.  *Id*.  A CRA's notice informs a furnisher of the "nature of the consumer's challenge to the reported debt, and it is the receipt of this notice that gives rise to the furnisher's obligation to conduct a reasonable investigation."  *Gorman*, 584 F.3d at 1157.  "Accordingly, the central inquiry when assessing a consumer's claim under § 1681s-2(b) is 'whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute.'"  *Chiang*, 595 F.3d at 38 (quoting *Gorman*, 584 F.3d at 1157).

Here, SST received notices of a consumer dispute from Experian for both

Synovus and CIGPFI tradelines.   The notices received for both tradelines on September 20, 2013 stated: "Not his/hers. Provide complete ID."   (SUF 20, 21.) According to this notice, SST investigated the dispute by verifying the identity of Gustafson and the credit card information.   (*Id*.)   The investigation confirmed the identity of Gustafson and the information reported up through January 2008 for the Synovus account and currently reported for the CIGPFI account were accurate.  (*Id*.)

Again, on January 28, 2014, SST received notices of a consumer dispute for each tradeline from Experian.  (SUF 22, 23.)  The reasoning for these disputes stated: "Consumer states inaccurate information.    Provide or confirm complete ID information."   (*Id*.)   SST investigated the dispute by verifying all data fields, the identity of Gustafson, the account information, and the first date of delinquency.  (*Id*.) With respect to the Synovus tradeline, SST also invested the date the account was closed, charged-off, and sold to CIGPFI.  (SUF 22.)  Once again, SST confirmed the identity of Gustafson and the information being reported was accurate.  (SUF 22, 23.)

Gustafson argues that SST's investigation was unreasonable because SST's procedure consisted only of receiving a dispute form from Experian and "comparing it to the computer screen on the account maintained by SST."  (Opp'n 7.)  Specifically, Gustafson contends that the investigation only took ten minutes and the credit resolution personnel never took the time to look at both accounts, even though he or she was capable of doing so.  *Id*.  In essence, Gustafson does not dispute the facts of SST's investigation but rather she argues that SST should have done *more* during its investigation.

The law does not require SST to investigate further than what is described in the notice of dispute.  *Gorman*, 584 F.3d at 1157.  Both notices questioned the identity and accuracy of the tradelines, therefore according to *Gorman* SST was only responsible for confirming the information for each tradeline and reporting the verified information to Experian.  *Id*.; *see also Westra v. Credit Control of Pinellas*, 409 F. 3d 825, 827 (7th Cir. 2005) ("[The furnisher's] investigation in this case was

reasonable given the scant information it received regarding the nature of [the consumer's] dispute.")  Nothing in Experian's notices identified the need for SST to "look back and forth at both the Synovus and CIGPFI accounts while re-investigating."  (Opp'n 7.)  The notices provided no suggestion of the nature of Gustafson's dispute with the other tradeline and therefore did not require SST to look at the account simultaneously.  *See Gorman*, 584 F.3d at 1158 (finding that a furnisher could not have reasonably been expected to undertake a more thorough investigation of *another* account based upon the limited information contained in the notice of dispute).

Gustafson also argues that she was limited in her ability to create a complete explanation regarding the inaccuracy of SST's furnishing because Experian's online dispute resolution tool restricted her to select from a pre-filled set of dispute categories.  (Gustafson Decl. ¶ 15.) Gustafson fails to show how the alleged deficiency in Experian's dispute reporting creates a genuine dispute as to the reasonableness of SST's investigation.  Again, SST's investigation is based upon what is provided by Experian.  *Gorman*, 584 F.3d at 1157.  If a CRA, like Experian, fails to provide relevant or adequate information to a furnisher, then the consumer has a private right of action against the CRA, but not against the furnisher.  *Chiang*, 595 F.3d at 38.  Here, Gustafson has already dismissed Experian from the case and therefore no longer has an action based upon this argument.  Therefore, any reasonable trier of fact would conclude that SST's investigation was reasonable based upon the notice provided by Experian.

### 2.    *SST Reported Accurate Information*

Additionally, SST argues that Gustafson cannot identify any factual inaccuracy in the four disputes submitted.  (Mot. 10.)  As an initial matter, the Court has already dismissed Gustafson's allegations under § 1681s-2(a) that SST allegedly provided inaccurate information to the credit-reporting agencies because she has no private

1   right of action to enforce them.[3]  Therefore, Gustafson is limited to arguing that SST's

2   investigation was unreasonable because SST was unable to determine the alleged

3   inaccuracies.  *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir.

4   2010) ("Although the FCRA's reinvestigation provision, 15 U.S.C. § 1681i, does not

5   on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many

6   courts, including our own, have imposed such a requirement.")  An item on a credit

7   report can be "incomplete or inaccurate" within the meaning of the FCRA's furnisher

8   investigation provision "because it is patently incorrect, or because it is misleading in

9   such a way and to such an extent that it can be expected to adversely affect credit

10   decisions."  *Gorman*, 584 F. 3d at 1163.

11         SST argues that simultaneously reporting the historic Synovus tradeline and

12   active CIGPFI tradeline is not "inaccurate" because such reporting is permitted and

13   required by the FCRA.  (Reply 5, citing Statement of General Policy or Interpretation;

14   Commentary on the Fair Credit Reporting Act, 55 FR 18804-01, 18817–18 (May 4,

15   1990) ("[A]ccounts placed for collection or charged to profit and loss . . . and the

16   reporting of other delinquent accounts . . . even if discharged in bankruptcy, may be

17   reported separately for the applicable seven year period, while the existence of the

18   bankruptcy filing may be reported for ten years."))  Further, SST argues that it closed-

19   out and ceased furnishing the Synovus tradeline when the account was sold to

20   CIGPFI, stating in its report to Experian that the account was "closed" and "purchased

21   by another lender."  (SUF 8–10; Gustafson Depo. Ex. 12.)

22         Gustafson does not dispute the accuracy of what was reported by SST, only that

23   both tradelines should not have been simultaneously reported or "double-reported."[4]

---

24   [3] "Gustafson maintains that the double entries were not accurate and thus that FCRA does not allow

25   the reporting in the manner done by SST.  But any inaccuracy in reporting is not privately actionable
per § 1681s-2(c)(1).  So even if Gustafson were correct that FCRA does not allow the two tradelines

26   that SST included on her report, she may not maintain her claim for those alleged violations."  (ECF
No. 20 at 6.)

27   [4] Gustafson for the first time argues that the tradelines are inaccurate because they were re-aged.

28   (Opp'n 4–6.)  The Court agrees with SST that the argument should not be considered because it was
never raised in the Complaint.  (Reply 8.)  *Flynn v. New York State Div. of Parole*, 620 F. Supp. 2d

1    (Opp'n 4–6.)  Gustafson points to the declaration of her expert witness, Thomas A.
2    Tarter, for the proposition that double-reporting falls beneath the industry standard of
3    "one debt, one tradeline."  (Tarter Decl. ¶¶ 7–9.)  SST argues that Tarter's Declaration
4    should not be considered at summary judgment because it consists of improper legal
5    conclusions and fails to specify what information he relied on in reaching his
6    conclusions.  (ECF No. 61 at 3–4.)  The Court agrees.  "Conclusory expert assertions
7    cannot raise triable issues of material fact on summary judgment."  *Sitrick v.*
8    *Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008).[5]

9          Regardless of whether Experian was allowed to report both tradelines,
10   Gustafson does not point to any evidence that shows what SST reported to Experian
11   was inaccurate.  None of the credit reports submitted by Gustafson report any
12   inaccurate or misleading information.  (*See* Brennan Decl., Exs. 11, 13, 14, 15, 16,
13   and 17.)  Importantly, the Synovus account always indicates that (1) the date the
14   tradeline was opened is June 2006; (2) the recent balance is $0; (3) the status of the
15   account is "Closed"; and (4) the account was charged-off and purchased by another
16   lender.  (*Id*.)  All of this information is accurate with respect to the Synovus tradeline.

17         In light of Gustafson's numerous other delinquent debts, the addition of one

18

19   463, 485 (S.D.N.Y. 2009) ("It is improper for a court, on a motion for summary judgment, to
20   consider new claims that were not pleaded in the complaint.")  All of Gustafson's re-aging
     arguments are based upon a credit report from April 5, 2014, which is after the Complaint was filed.
21   (See Brennan Decl., Ex. 11.)  Even after the Court dismissed some of Gustafson's claims, she never
     amended her complaint to include these allegations.  Gustafson is precluded from effectively
22   amending her complaint through her opposition.
23   [5] For example, Tarter states that with "virtual certainty" the double-reporting resulted in a substantial
     reduction of Gustafson's credit score (Tarter Decl. ¶ 11), but offers no explanation how he came to
24   that conclusion, and even admits that he does not know the scoring models used by the credit
     bureaus (*see id*).  *Sears Sav. Bank v. Ins. Co. of N. Am*., 45 F.3d 437 (9th Cir. 1994) ("Because the
25   declaration offers conclusory legal opinion rather than personal knowledge, the district court's order
     excluding it is not manifestly erroneous.")  Further, Tarter does not provide any materials, besides
26   generally referencing the FCRA, to support his statement that double-reporting falls beneath the
     industry standard for maximum possible accuracy.  *See Samuels v. Holland American Line-USA*
27   *Inc*., 656 F.3d 948, 953 (9th Cir. 2011.) (upholding the district court's exclusion of an expert
     declaration because the expert failed to specify what information he relied on in reaching his
28   conclusion).

"closed" account on her report does not exacerbate her tenuous credit situation.  *See Lewis v. Trans Union, LLC*, No. 1:13-CV-00229-LJO, 2013 WL 1680639, at *4 (E.D. Cal. Apr. 17, 2013) (finding that enough information was listed for each account such that "[n]o lender reviewing this document with due care could reasonably interpret these entries as representing two different debts [plaintiff] accrued to two different lenders in identical amounts such that it can be expected to adversely affect credit decisions") (internal quotations omitted).  Gustafson can only point to Tarter's conclusory statements and her own, unsupported assumptions, that her credit would be adversely affected.  It is clear from the information reported that another lender owns the debt and Gustafson is no longer obligated to pay Synovus.  Any unfavorable credit decision is likely due to the fact that the debt is still delinquent and the additional unrelated delinquent debts in Gustafson's credit report.  Therefore, summary judgment is appropriate because no reasonable jury could find the reported tradelines patently incorrect or misleading.

Lastly, SST argues that there is no evidence that SST's conduct caused Gustafson to incur actual damages, nor is there evidence that SST acted willfully or recklessly with regard to its investigation of Gustafson's credit disputes.  (Mot. 15–19.)  Having determined that there is no genuine dispute as to the reasonableness of SST's investigation and the accuracy of what SST reported, the Court need not reach the issue of damages.

**B.   CCCRAA**

Gustafson also alleges that SST violated the CCCRAA, which provides that a "person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."  Cal. Civ. Code § 1785.25(a).  This section's commands are "nearly identical" to those in § 1681s-2(a) of FCRA.  *Gorman*, 584 F.3d at 1172.

While FCRA expressly preempts any state requirements or prohibitions with respect to the subject matter regulated under 15 U.S.C. § 1681s-2(a), Congress

specifically exempted California Civil Code section 1785.25(a) from preemption. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010). Therefore, a plaintiff may not bring a private action to enforce violations relating to inaccurate information under FCRA, but she may bring one on the same basis under the CCCRAA. *Id.* Furthermore, while a plaintiff may bring a failure-to-investigate claim under FCRA, Congress did not exempt CCCRAA's failure-to-investigate provision from preemption. *Id.* at 889 (holding that FCRA preempts section 1785.25(f) relating to failure to investigate upon receipt of dispute notice from a credit-reporting agency).

The same test is applied under both the FCRA and the CCCRAA in determining whether an item of credit is considered "inaccurate." *See id.* at 890–91. Because there is no genuine dispute that SST's reporting was accurate for the reasons discussed above, summary judgment dismissing the CCCRAA claim is also appropriate.

## C. FDCPA and RFDCPA

Congress enacted the FDCPA to eliminate abusive debt collection practices, including the harassment and abuse of consumers. 15 U.S.C. § 1692(e). "To effectuate this purpose, the Act prohibits a 'debt collector' from making false or misleading representations and from engaging in various abusive and unfair practices." *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1198 (C.D. Cal. 2008). The California Legislature explicitly incorporated the FDCPA's provisions into the RFDCPA, including the proscriptions in §§ 1692d–f. Cal. Civ. Code § 1788.17. Gustafson alleges that SST violated three different FDCPA provisions: §§ 1692d, 1692e, and 1692f. (Compl. ¶ 25(a)–(c).) Section 1692d prohibits a debt collector from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Neither may a debt collector "use any false, deceptive, or misleading representation or means in connection with the collection of any debt," such as falsely representing the character or legal status of the debt or threatening to take an action that cannot be legally done. § 1692e. Further, the FDCPA proscribes the use of "unfair or

unconscionable means to collect or attempt to collect any debt," including collecting any amount not permitted by law. § 1692f.

SST argues that it is not "false, deceptive, or misleading" for a debt collector to report that it was unable to collect a valid debt. (Mot. 14.) SST again cites to *Kohut v. Trans Union LLC* for this proposition. 2004 WL 1882239 (N.D. Ill. Aug. 11, 2004.) In *Kohut*, the court held that "it is not false, deceptive, or misleading for [a furnisher] to tell a consumer credit reporting agency that it attempted to collect a debt that [plaintiff] concedes is valid even if that leads to two records relating to the same debt in [plaintiff's] credit report." *Id*. at *2. In the Court's previous Order, the Court concluded that *Kohut* was inapplicable because the parties did not agree that SST's report was accurate. (*See* ECF No. 20 at 7–8.) But now on summary judgment, Gustafson cannot show any genuine dispute as to the accuracy of the information reported by SST. Therefore, the Court adopts *Kohut*'s reasoning. Further, SST contends that there is nothing harassing, oppressive, abusive, unfair or unconscionable regarding its furnishings because Experian was permitted to display Gustafson's delinquent Synovus tradeline for seven years, and the information that was reported was accurate and not misleading. (Mot. 14.)

Gustafson's only arguments are conclusive, unsupported statements that SST violated the FDCPA and RFDCPA by reporting duplicative and inaccurate information. (Opp'n 16.) As discussed above, because Gustafson cannot show there is a genuine dispute with regard to the accuracy of the information SST reported or Experian's ability to report the tradelines, Gustafson's FDCPA and RFDCPA claims also fail as a matter of law.

/ / /

/ / /

/ / /

/ / /

/ / /

14

# V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** SST's Motion for Summary Judgment.  (ECF No. 47.)  SST shall file a proposed judgment by **June 12, 2015**.

**IT IS SO ORDERED.**


June 2, 2015


_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**